BUSLER *v.* STATE.

(*Knoxville,* September Term, 1944.)

Opinion filed December 2, 1944.

CRAWFORD & HURD, of Newport, for plaintiff in error.

NAT TIPTON, Assistant Attorney-General, for the State.

MR. JUSTICE NEIL delivered the opinion of the Court.

The appellant, Charles Busler, and his wife, Eva Busler, were indicted by the grand jury of Cocke County, said indictment charging them with stealing flowers and frames from the grave of Mrs. Nellie Elizabeth Suggs, of the value of five and ten dollars, and alleged to be the property, respectively, of Homer Fox, Bernard Wilds, and other named persons. The jury convicted Charles Busler of the crime of larceny and disposing of stolen property. His wife, Eva Busler, was found guilty of disposing of stolen property. Their maximum punishment was fixed at one year in the penitentiary. A motion for a new trial was seasonably made and raised the following questions:

"(1) That there was no evidence to support the verdict of the jury.

"(2) That the evidence clearly preponderated in favor of the innocence of the defendants and against the verdict of the jury.

"(3) That the ownership of the property alleged to have been taken was improperly laid in the indictment.

"(4) That the property alleged to have been taken was not sufficiently identified as property belonging to any of the persons in whom the ownership was laid by the indictment.

"(5) That the property charged to have been stolen was not shown to have had any value to any of the persons in whom ownership was laid by the indictment at the time the same was charged to have been taken.

"(6) That the trial judge committed prejudicial error against the defendants in ruling on the competency of the testimony of A. L. Horton, a witness for the defendants, to the effect that it was a customary practice for florists in this area to reclaim and reuse frames, racks, etc., furnished with floral offerings at funerals after the flowers had wilted following the burial.

"(7) That error prejudicial to the defendants was committed by the trial judge in interrogating the accused, Charles Busler, while on the witness stand, regarding his visit to the cemetery—such interrogation taking place after special counsel for the State had finished his cross-examination and excused this defendant—the form of the question and the manner and time of its asking being such as to convey to the jury the idea that the trial judge believed the accused guilty as charged in the indictment.

"(8) That the Attorney-General was guilty of conduct unbecoming an officer of the Court upon the trial of the case by persisting in an effort to introduce testimony which the trial judge had ruled incompetent, and which

had a tendency to inflame and prejudice the minds of the jury against the accused.

"(9) That upon the trial of the case the Attorney-General misconducted himself as an officer of the Court, to the prejudice of the accused, by persisting in asking the accused questions regarding other funerals and regarding flowers alleged to have been taken from other graves, after the trial judge had ruled all such evidence out—such questions having a tendency to inflame the minds of the jury and prejudice them against the accused.

"(10) That the punishment fixed by the jury was so harsh and excessive under the law and the facts of the case as to indicate passion, prejudice and caprice on the part of the jury."

The trial judge overruled the motion and judgment was pronounced in accordance with the verdict of the jury, except that the imprisonment was directed to be served in the county workhouse instead of the state penitentiary, under Code, sec. 11793. Thereupon both defendants petitioned the trial judge that he parole them from serving the sentence thus imposed, which petition was granted as to Mrs. Eva Busler and partially granted as to the defendant Charles Busler in that he was paroled after having served ninety days of the workhouse sentence.

The defendant Charles Busler later withdrew his petition for a parole, excepted to the action of the trial judge in pronouncing sentence and in overruling his motion for a new trial, and an appeal was duly perfected to this Court. The assignments of error embrace every ground of the motion for a new trial and need not be repeated.

Before considering the legal questions raised in these assignments, it is necessary that we carefully review the facts and circumstances upon which the State relies

to sustain a conviction. The defendant Charles Busler and his wife Eva were, in February, 1944, and several years prior thereto, engaged in the business of furnishing flowers and floral designs to be used as memorials to deceased persons. On February 7, 1944, Mrs. Nellie Elizabeth Suggs died and a number of relatives and friends of the deceased purchased from defendants floral offerings for which they paid various sums of money, ranging from $5 to $15 each. Some of the flowers thus sold were securely fastened to metal or wire stands, which were later carried to the cemetery and placed upon the grave of the deceased. The funeral was held about 2 o'clock in the afternoon of February 7th. On the night of the same day, between the hours of 10:30 and 11:30, the defendant Charles Busler secured the services of a taxicab driver and drove to the cemetery and there removed six or seven of these floral offerings, carrying them to his place of business in Newport, Tennessee. Defendant makes no denial of having removed these designs from the grave of Mrs. Suggs. He insisted in the court below that he took only the metal stands or frames to which the flowers were attached and that he did not remove or re-use the flowers for any purpose; that because of the shortage of these metal frames and his inability to secure a sufficient number, due to war emergencies, he thought it not improper to repossess these metal stands. It was further contended that the floral offerings had served their purpose, having become wilted and of no value; that when the designs were made up and delivered to the purchasers, he reserved the right to repossess these wire frames. This contention was denied by the prosecution. It was contended by the State that some of these flowers were used by the defendant in making designs for a funeral that was held the following

day. We find some evidence in the record that Busler stated to one or more persons that he had used some of these flowers in a funeral that was conducted on the afternoon of February 8th. Upon this last issue the evidence is more or less conflicting. The defendant introduced as a witness a prominent florist of Morristown, who testified that it was customary for florists in his community to repossess metal frames after the designs had served their purpose.

In the first three assignments of error it is insisted that the evidence preponderates in favor of the innocence of the defendants and against the verdict of the jury. The third assignment is that a new trial should have been granted because the ownership of the property alleged to have been taken was improperly laid in the indictment. It should be here stated that there were eight counts in the indictment, each count averring that the owner of the stolen property was a particular person, naming him, who had purchased a floral offering. The fourth assignment raises the question of insufficient identification of the particular property taken as "belonging to any of the persons in whom the ownership was laid by the indictment." The fifth assignment is to the effect that "the property charged to have been stolen was not shown to have any value to any of the persons in whom ownership was laid by the indictment at the time the same was charged to have been taken." Other assignments of error will be discussed later on in this opinion. The third, fourth and fifth assignments of error above referred to may be considered together.

It is earnestly contended by counsel for the defendant that ownership of the property is improperly laid in the several persons who made purchases of floral designs and sent them to the cemetery or funeral home as a

memorial or symbol of their affectionate regard for the deceased; that ownership should have been laid in the personal representative of the deceased. Able counsel for both the State and the defendant have cited no case, nor have we been able to find any after diligent search, that is determinative of this question.

██ The crime of larceny clearly involves ownership and possession of goods and chattels. It has been characterized as a criminal trespass upon the right of possession. *Fitch* v. *State*, 135 Fla. 361, 185 So. 435, 125 A. L. R. 360. There can be no doubt that there must be an owner of the property taken and there must also be a trespass to the possession of the owner, either actual or constructive. "Without this trespass there can be no larceny; and there can be no trespass unless the property was in possession of the one from whom it was allegedly stolen." 32 Am. Jur., Larceny, sec. 15; *Jones and Bass* v. *State*, 166 Tenn. 102, 59 S. W. (2d) 501, citing *State* v. *Missio*, 105 Tenn. 218, 222, 58 S. W. 216. The following is also cited with approval in *Jones and Bass* v. *State*, *supra*:

"In 17 R. C. L., p. 72, it is quite aptly said that: 'The exact state of the title of stolen property is of no particular concern to the thief, except that it must have been in someone else; hence evidence of possession is ordinarily sufficient proof of ownership; and this is true although the one in possession may have held the property as bailee, trustee, or otherwise having only a special interest, and not a general ownership of the property.'"

██ ██ Applying the rule of law as to ownership and possession, the right and title to property, as against the claim of an alleged thief, we hold that one who makes a purchase of a floral design and sends it to a funeral home or to a cemetery, to be placed upon the grave of a

relative or friend as a memorial or token of esteem, has a special property interest in it so long as it remains in a condition to serve the purpose for which it was designed. In giving consideration to the value of stolen property, the law draws no fine distinctions in favor of one who takes it from the true and lawful owner by criminal trespass except to determine the grade of the offense. Monuments and memorials that stand only as fleeting symbols of love, or of a deep and abiding friendship, may not possess any material value to those who may have erected them, but such things do have a value that is vital and ever present in all human relations. Against these sacred memorials there is no right of criminal trespass.

Responding further to the question of possession, we think when these offerings were sent to the cemetery and placed upon the grave of the deceased, the owner of the lot where the body was interred had possession of them as trustee for the donors, and any trespass upon this property, or felonious taking thereof, was an offense against the right of possession of the said donors. Of course, where floral offerings have withered and died and hence no longer serve the purpose of the donors, they are not the subject of larceny. In this connection it should be said that the question of whether or not such offerings and designs have ceased to serve their purpose cannot and should not be left alone to the judgment of the alleged trespasser. It results therefore that ownership was properly laid in the indictment as being in those persons who purchased these floral offerings and had them sent to the grave of the deceased.

Under the fourth assignment of error it is insisted that the trial court should have granted a new trial because there was insufficient identification of the particular

property taken "as belonging to any of the persons in whom ownership was laid." An examination of the record shows that the persons whose names appeared in the indictment as owners sent floral offerings which were placed upon the grave of Mrs. Suggs.

The following testimony was given by Anderson Suggs, a son of the deceased: He stated that he went to the cemetery the day after his mother's funeral and found nothing but "about a five dollar spray of flowers and the casket blanket." In this he is corroborated by his brother Estill Suggs, who also went to the cemetery the day following the funeral and found these floral designs were missing. Immediately after visiting the cemetery, Anderson Suggs went to the place of business of the defendant and testified regarding the following conversation:

"Q. What else did he say? A. I said 'Charlie, what did you do with them?' 'Well,' he said, 'I will tell you what; we had some flowers ordered and the bus had carried them all by and we had to have some flowers. We had the Driscoll and Mantooth funerals on us and didn't have them.' And he said, 'That is the only reason in the world I went over there,' said 'I went over there to get the flowers.' I said, 'Well, were you after the stands?' He said, 'No, sir, I wanted the flowers.'

"Q. What did he say he did with the flowers? A. He said he resold them.

"Q. To who? A. He said he didn't know how many went on the Driscoll or Mantooth funeral; said he wouldn't attempt to say."

It thus appears that these designs were not only shown to be missing but that the defendant admitted having taken them and used some of the flowers for two other funerals. We think under the foregoing testimony that there was a sufficient identification of the property alleged

to have been taken. This assignment is therefore not well taken and must be overruled.

▮▮ Contention is made in the sixth and seventh assignments of error that the trial judge committed prejudicial error in excluding the testimony of A. L. Horton, a florist of Morristown, to the effect that "It was customary for florists in this area to reclaim and re-use frames, racks, etc., furnished with floral offerings, after the flowers were wilted following a funeral." It appears that when this witness was offered by the defendant the State objected to the foregoing testimony, which objection was sustained by the trial judge, but before the case was concluded the said witness was recalled and was allowed to testify as to the custom which the defendant contended prevailed in the immediate vicinity. If there was any error in sustaining the objection in the first instance, it was seasonably cured by the Court in allowing the witness to thus give his testimony.

It is further contended that the learned trial judge committed further prejudicial error in cross-examining the defendant as to whether or not he had any light when he went to the cemetery. The defendant answered the question propounded by the Court that his automobile lights were on. We fail to see wherein these questions were prejudicial. They afforded the defendant an opportunity to testify that he did not try to conceal himself and that he did not go to the cemetery in a secret and stealthy manner for the purpose of reclaiming these racks and metal frames. There is accordingly no merit in this assignment and it must be overruled.

▮ In the eighth and ninth assignments of error it is contended that the attorney general was guilty of conduct unbecoming an officer in that he persisted in an effort to introduce testimony which the trial judge had

ruled incompetent and which had a tendency to prejudice the minds of the jury against the accused; that the attorney general further "misconducted himself to the prejudice of the accused by persisting in asking questions regarding other funerals and regarding flowers alleged to have been taken from other graves, after the trial judge had ruled all such evidence out." We have made a careful examination of the record upon the foregoing assignment and find that these contentions are not well taken.

The attorney general is shown to be a vigorous prosecutor, but when he asked the questions complained of the trial judge at once excluded the answers as incompetent. We think the Court made it sufficiently plain to the jury that they were to consider only the questions of fact relating to the offense laid in the indictment. There was more or less wrangling among the counsel during the trial of this cause and the Court repeatedly cautioned the counsel to confine themselves to the questions at issue. He may have appeared to be out of patience with counsel at times, but we think, from a fair consideration of the record, he was patient with the respective counsel and that he made an earnest effort to give the defendant a fair and an impartial trial.

The tenth assignment of error complains of the verdict of the jury as being excessive. The question of punishment was one which was within the exclusive province of the jury. The penalty for the crime of petit larceny is fixed by the statute at from one to five years in the penitentiary, or a jury may, in its discretion, reduce the punishment to some period of time in the county workhouse less than twelve months. We cannot say from an examination of the record that the punishment im-

posed by the jury is excessive. This assignment is found to be without merit and is overruled.

 Responding to the first three assignments of error, which relate to the sufficiency of the evidence to justify this conviction, we are constrained to hold that these assignments are not well taken; that the evidence when taken as a whole does not preponderate in favor of the innocence of the defendant and against the verdict of the jury.

It results that all assignments of error are overruled and the judgment of the trial court is affirmed.