JAMES CAMPBELL, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

## 450 S.W.2d 795.

Court of Criminal Appeals of Tennessee. Sept. 26, 1969.

Rehearing Denied Nov. 20, 1969.

Certiorari Denied by Supreme Court Feb. 2, 1970.

Lee Asbury, Jacksboro, for plaintiff in error.

George F. McCanless, Atty. Gen., Lance D. Evans, Asst. Atty. Gen., Arzo Carson, Dist. Atty. Gen., Huntsville, for defendant in error.

## OPINION

MITCHELL, Judge.

James Campbell, the defendant below, has appealed a conviction of petit larceny and a sentence of one year in the state penitentiary from the Criminal Court of Campbell County.

The errors assigned by the defendant are as follows;

(1) That the honorable trial court erred in overruling his motion for a new trial as to the sufficiency of the State's proof to convict him of the offense charged in the indictment.

(2) That all of the evidence introduced at the trial of this case preponderates against the guilt of the defendant and in favor of his innocence as to the crime alleged in the indictment.

(3) That the honorable trial Court erred in failing to sustain defendant's motion to dismiss at the close of the State's proof and at the close of all the proof upon the ground of fatal variance between the indictment and the proof.

(4) That the honorable trial Court erred in overruling the defendant's motion for a new trial on the ground of fatal variance between the indictment and the proof.

The first count of the indictment charged James Campbell with burglary in the second degree by breaking and entering the dwelling house of Flora Huckaby Hobbs in the daytime with intent to commit larceny. The second count charged larceny of a radio, value $39.00; groceries, meat and canned foods, value $15.00; two cushions, value $3.00; and one record player, value $89.00; of the goods and chattels of Flora Huckaby Hobbs.

On the trial the proof showed that Mrs. Flora Huckaby Hobbs lived with her brother and her children in her dwelling house on February 27, 1968. That she was away from the house for awhile that day. She locked the door when she left. That she rode to Junior Giles house in Mr. Gunter's car. That she left Junior Giles house in the car with James Campbell. That he drove to the red light where James Campbell got out and left it under the red light. That he went into one store

and then into another store. That the officers arrested her and took her to City Hall. That she got home about 6:30 or 7:00, where she discovered her house had been broken into, "the door was kicked open, busted, the whole panels was kicked out of it." That the General Electric clock radio was gone, value at $39.00. Mrs. Hobbs stated that a record player was gone, that it did not belong to her but that it was taken from her house. That it belonged to Mrs. Mars, that three boys had brought it to her house "sometime" like a week before that. She stated that her cushions were worth $3.00, were purple and had fringe around them and had been given to her by her daughter, and groceries worth $15.00 were gone.

Mrs. Hobbs then went to her daughter's house where her children were and then to where her daughter worked and then she went to James Campbell. That she told James Campbell, "I told him I wanted my stuff" and he said, "I've not been in your house." "I said don't tell me that cause I know you have."

Mrs. Hobbs then went to City Hall where she reported the burglary and loss of the radio and record player to Mr. John Dossett. That he looked at Mr. Gaylor and said "let's go." In about five minutes Mr. Dossett and Mr. Gaylor came back with the record player and in a couple of weeks brought her radio in, that they had it in court in the Judge's office at the preliminary hearing, that the Judge let her take her radio back home, that she had the papers there to show that her daughter bought the radio in Columbus, Ohio and gave it to her for a Christmas present. Mrs. Hobbs testified she talked to the defendant Campbell and he was wanting her "not to come

to court" and I said "that wouldn't bring my stuff back."

On cross examination, Mrs. Hobbs testified she did not suspect the defendant left her in the car under the red light on purpose so she could get arrested. That she did not get mad at the defendant until she missed her property. That the defendant had left her there in the car under the red light on Main Street, in the traffic. When asked if she was drunk when arrested, she answered that she had drunk some moonshine whiskey in the defendant's car. That the whiskey came from Junior Giles.

Mrs. Hobbs also testified on cross examination that she had since learned that the record player was stolen but she did not know that at the time the three boys Kermit Komer, Avery Ivey and Philip Ivey brought it to her house.

John Dossett, city policeman, testified that he knows the defendant James Campbell and the prosecuting witness Mrs. Hobbs. That Mrs. Hobbs came to City Hall February 28, 1968, and made complaint about her house being broken into the day before and a record player, value $89.00; a GE clock radio, value $29.00; groceries, $15.00; and cushions $3.00; were missing from her house. That a few minutes later the same day, he located the record player which he got from Glen Hatmaker who operates a taxi cab stand, Mrs. Hobbs identified the record player and claimed it for her own. That later, about March 4, he found the GE radio which he recovered from Elmer Allen who worked at B and M Beer Tavern.

Glen Hatmaker, age 54, a cab driver testified for the State that city policeman John Dossett, about February

28, 1968, came and inquired about a record player and that he let Mr. Dossett have the record player in question, filed as exhibit one. Mr. Hatmaker further testified that the day before the officer came looking for the record player, that James Campbell came alone in his car to the cab stand and sold or pawned the record player to him for $5.00, that it was in the trunk. That this was in LaFollette in Campbell County.

Mrs. Ethel Mars testified for the State that the record player belonged to her, that she had bought it at Zebricks in Nashville and that it was taken from her house the night of March 24, 1968.

This conflicting testimony by Mrs. Mars concerning the date of March 24, was apparently reconciled by the jury as an honest mistake about the date because city policeman John Dossett testified positively that on February 28, Mrs. Hobbs complained of the burglary of February 27 and described the record player. That within a few minutes he located the record player in the possession of Glen Hatmaker the cab driver and obtained possession of it and that Mrs. Hobbs identified it, Mr. Hatmaker corroborated Mrs. Hobbs and Policeman Dossett that around February 28, 1968 James Campbell brought the record player to him and pawned it to him and that the following day city Policeman Dossett came and took it.

The State closed its case, the defendant did not testify and did not offer any proof, and closed his case. The defendant had made a motion, at the close of the State's proof, to dismiss the case. Again at the close of the proof the defendant renewed his motion to dismiss the case upon the ground of a fatal variance between the indict-

ment and the proof, the trial judge overruled the motion and the defendant excepted.

Assignments of error 1 and 2 go to the sufficiency and preponderance of the evidence.

The rule which we must abide by is that this court will not reverse a criminal case on the facts unless it is shown that the evidence preponderates against the verdict and in favor of the innocence of the defendant. Anderson v. State, 207 Tenn. 486, 341 S.W.2d 385; Mahon v. State, 127 Tenn. 535, 156 S.W. 458; Turner v. State, 188 Tenn. 312, 219 S.W.2d 188; Batey v. State, 191 Tenn. 592, 235 S.W.2d 591.

The verdict of guilty approved by the trial court accredited the testimony of the witnesses for the State, and established their credibility, Ivy v. State, 197 Tenn. 650, 277 S.W.2d 363, which displaced the presumption of innocence, raised a presumption of guilt and put on the accused the burden of showing the evidence preponderates against the verdict and in favor of his innocence. Ivy v. State, supra; Batey v. State, supra; Turner v. State, supra.

The defendant James Campbell was found in the unexplained possession of a stolen record player of the value of $89.00 which he sold or pawned to the cab driver Hatmaker for $5.00. The circumstances are not only consistent with guilt but inconsistent with innocence, and give rise to the inference that he is the one who stole the record player.

In Peek v. State, 213 Tenn. 323, 328, 375 S.W.2d 863, it was held that:

"First, in this State we follow the generally approved

rule that proof of possession of recently stolen goods gives rise to the inference that the possessor has stolen them. 2 Wharton, Criminal Law, 31, sec. 411 (1954); Hughes v. State, 27 Tenn. 75, 76-77 (1847); Cook v. State, 84 Tenn. 461, 464, 1 S.W. 254 (1886). A good statement of this rule is found in Shaw v. State, 1 Tenn.Cas. 77, 78 (1858), where the Court said: 'Greenleaf sec. 34, states the rule to be, "That the possession of the fruits of crime recently after its commission" raises a presumption of guilt, prima facie only, of course. This single fact, if unexplained by direct evidence, the attending circumstances, good character or otherwise, will be conclusive.' "

Assignments of error 3 and 4 raise the question of the variance between the allegation in the indictment and the proof, about ownership of the stolen record player.

The evidence shows that the record player actually belonged to Mrs. Ethel Mars but that it was in the possession of the prosecutrix Mrs. Flora Hobbs in her dwelling house with the other items of her personal property which were stolen when her house was burglarized.

In Watson v. State, 207 Tenn. 581, 341 S.W.2d 728 our Supreme Court held as follows:

"The only error assigned by Watson on this, his appeal from a conviction of armed robbery, is that

'the Court erred by overruling his motion for a directed verdict of not guilty, because the state failed to prove that the money taken in the robbery was the property of Ruby E. Witt as alleged by the indictment.'

Mrs. Witt testified that she did 'operate a grocery store' and had in her employ 'I only have one boy.' While she was alone in this store on the occasion in question, the defendant entered and, after attacking and cutting her with a knifelike instrument, he forced her to take $135 from the cash register and place it in his pocket. She was then forced to lie on the floor of the store during his departure.

(1) Assuming, in so far as it applies to this case, that the above undisputed evidence is insufficient evidence of absolute ownership by Mrs. Witt of this money, it is in that event, however, proof of the possession by her as agent or bailee of the owner.

\*   \*   \*   \*   \*   \*

'\* \* \* It is well settled, that whenever a person has a special property in a thing, or holds it in trust for another, the property may be laid in either. As for instance, goods left at an inn, or entrusted to a person for safekeeping, or to a carrier to carry.'

In Jones [& Bass] v. State, 166 Tenn. 102, 104, 59 S.W.2d 501, this Court quoted approvingly from 17 R.C.L., page 72, as follows:

'The exact state of the title of stolen property is of no particular concern to the thief, except that it must have been in someone else; hence evidence of possession is ordinarily sufficient proof of ownership; and this is true although the one in possession may have held the property as bailee, trustee, or otherwise having only a special interest, and not a general ownership of the property.'

The rule of law just stated, and so well established, illustrates the fact that if this indictment had charged Watson with larceny only, then the allegation of ownership of this money in Mrs. Witt would have been sufficient, if it be assumed that the actual ownership was in some other person. This is because, in any event, she was in possession as agent or bailee of that owner.

(3) 'Robbery is but an aggravated larceny.' Crews & Crenshaw v. State, 43 Tenn. 350, 353. Therefore, any allegations of ownership of the property stolen which is sufficient under an indictment for larceny so as to not be a variance or is sufficient proof of the allegation of the indictment is, by the same token, sufficient in an indictment for robbery.

(4) There is, therefore, no variance, as a matter of law, between the allegation of the indictment as to ownership of this property being in Mrs. Witt and the proof that she was in possession thereof as agent or bailee of the true owner, if that owner be some other person than she. Such proof is sufficient to satisfy the allegation of the indictment that she was the owner."

We are of the opinion that there is no fatal variance between the allegation in the indictment and the proof. That ownership may be alleged to be in the person who is in possession of the property at the time it was stolen.

The assignments of error are overruled and the judgment of the trial court is affirmed.

WALKER, P. J., and HYDER, J., concur.

## OPINION ON PETITION
## TO REHEAR

MITCHELL, Judge.

Counsel for James Campbell has filed a forceful and persuasive petition to rehear this case on the ground that there was a fatal variance between the allegations in the indictment and the proof concerning the ownership of a record player described in the indictment as being "of the goods and chattels of Flora Huckaby Hobbs," which was stolen from her dwelling house along with other items of her personal property on February 27, 1968.

The questions raised in the petition to rehear are substantially the same questions which were ably argued by defendant's counsel in his appellate brief.

James Campbell, the defendant below, was tried on an indictment charging burglary in the second degree of the dwelling house of Flora Huckaby Hobbs, and grand larceny in the second count.

The articles of personal property alleged to have been stolen were as follows:

```
1 General Electric radio . . . . . . . . . . . . value $ 39.00
Groceries:  Coffee
            Meat
            Canned Food . . . . . . . . . . . value $ 15.00
2  Cushions  . . . . . . . . . . . . . . . . . . . . . . value $   3.00
1  Record  Player  . . . . . . . . . . . . . . . . value $100.00
```

"Of the goods and chattels of Flora Huckaby Hobbs" of the total value $157.00

The jury found the defendant guilty of petit larceny and fixed the punishment at one year in the penitentiary.

All of the above named items were stolen from the dwelling house of Flora Huckaby Hobbs and all of them were the property of Mrs. Hobbs except the record player which the proof shows belonged to Mrs. Ethel Mars. This record player had been brought into the residence of Mrs. Hobbs by Kermit Comer, Avery Ivey and Philip Ivey and left in her house about a week before the burglary. Mrs. Hobbs testified she did not know it was stolen when the boys left it in her house.

James Campbell was in the unexplained possession of the stolen record player which he sold to Glen Hatmaker and which was recovered by the policemen the day following the burglary. Mrs. Hobbs' G.E. radio was recovered from Elmer Allen. The record is silent concerning the other stolen items, and no reason is given why Elmer Allen was not a witness.

In the indictment in this James Campbell case the ownership of the record player was laid in Mrs. Hobbs from whose possession, custody and control it was stolen in a burglary committed against her dwelling house.

It is true there was no proof that Mrs. Mars agreed for Mrs. Hobbs to hold the record player in trust or as a bailee. We think the law interprets the behavior of people and fixes responsibilities and creates relationships as a natural result of their actions. In as much as Mrs. Hobbs did not know the record player was stolen when it was left at her home, it is fair to assume she did not know the true owner. There was a certain relationship concerning Mrs. Hobbs and the record player, whether

by chance or by a combination of circumstances or by fortuitous events she was in the exclusive possession of the record player at the time it was stolen from her house.

■ Ordinarily, a bailment is created by delivery and acceptance and consent or agreement of the parties. We think a bailment may result by the actions and conduct of people concerning the goods in question, though not foreseen or contemplated.

In 3 RCL 10 and 12 the following discussion is considered applicable here:

"* * * However, the necessary acceptance need not be actual but may be implied from circumstances, as where one acquires possession of property by chance, as by finding, or where a customer in a store lays aside a cloak near or in the presence of the employees preliminary to trying on a new garment. In such a case there is a constructive acceptance." 3 RCL 10.

"* * * If one, without the trespass which characterizes ordinary larceny, comes into possession of any personalty of another and is in duty bound to exercise some degree of care to preserve and restore the thing to such other or to some person for that other or otherwise to account for the property as that of such other, according to circumstances, he is a bailee. It is the element of lawful possession, however created and the duty to account for the thing as the property of another, that creates the bailment, regardless of whether such possession is based on contract in the ordinary sense or not. Thus, while the finder of the property of a person unknown is not bound to inter-

fere with it, if he takes it into his possession he becomes at once bound, without any actual contract, and perhaps without any actual intention to bind himself to the owner of the property, for its safe keeping and return . . . In such cases, the law, having regard to the requirements of justice between men, implies a contract for the keeping of the property until it shall be restored to the proprietor or his agent; and the contract thus implied is ordinarily that of a depositary." 3 RCL 12.

In 6 Am.Jur. 86 and 87 the following language may be applied in this case:

"It has previously been observed that an actual contract or one implied in fact is not always necessary to create a bailment; that such a contract may be implied in law as well as in fact. Where, otherwise than by a mutual contract of bailment, one person has lawfully acquired the possession of personal property of another and holds it under circumstances whereby he ought, upon principles of justice, to keep it safely and restore it or deliver it to the owner, for example, where possession has been acquired accidentally, fortuitously, through mistake, or by an agreement, since terminated, for some other purpose, such person and the owner of the property are, by operation of law, generally treated as bailee and bailor under a contract of bailment, irrespective of whether or not there has been any mutual assent, express or implied, to such relationship * * *"

"In conformity with the principle stated in the preceding section, it is generally held that finders of lost

property and the owners of premises, or of vehicles, where property has voluntarily been laid down and forgotten, who assume to custody thereof are bailees, or, as more technically demonstrated by some courts, quasi bailees. Thus, while the finder of the property of a person unknown is not bound to interfere with it, if he takes it into his possession he becomes at once bound, without any actual contract, and perhaps without any actual intention to bind himself to the owner of the property, for its safekeeping and return * * *"

The question on this petition to rehear is the same question we decided on the appeal, that is, whether the possession of the record player by Mrs. Hobbs would justify an allegation in the indictment that it was "of her goods and chattels"; or whether a fatal variance existed between the proof in the case and the allegations in the indictment, requiring a reversal of the conviction.

In our preparation of the opinion in this case we had before us the opinion in Johnson v. State, 148 Tenn. 196, 253 S.W. 963, cited in defendant's brief and again relied on in the petition for a rehearing.

In the Johnson case, supra, the indictment alleged the automobile stolen was the property of "Morgan Hitchcock Company, a corporation existing and authorized by virtue of the laws of Tennessee." The proof on the trial of the case showed the automobile in question was the property of Morgan Hitchcock Company, a corporation chartered and existing of the laws of the State of Indiana.

The true owner was an Indiana corporation. The owner named in the indictment was a Tennessee corpora-

tion. The Tennessee corporation was a complete stranger to the transaction.

The ownership of the stolen automobile was shown to be in a different person or different legal entity from that alleged in the indictment. This resulted in a fatal variance between the proof and the allegation in the indictment.

The Johnson case is authority for the proposition that ownership must be proved as alleged in the indictment, but that was impossible to do because of the fatal variance between the indictment and the proof.

We think this is a different question from the one raised in this James Campbell case. We think authorities support the proposition that ownership of the stolen record player could properly have been alleged in the true owner, or, the person who had possession of it at the time it was stolen.

In our original opinion we cited and quoted from the opinion in Watson v. State, 207 Tenn. 581, 341 S.W.2d 728 (1960), a statement of the law which we think supports our finding that ownership of personal property may properly be alleged in the person who has possession of it at the time of the commission of the larceny.

In the Watson case, Ruby E. Witt operated a grocery store. She was not the owner but she had possession of the goods as agent or owner's bailee. She was alone in the store when defendant came and robbed her.

In that case the defendant made a motion for a directed verdict of not guilty because the state failed to

prove the money taken in the robbery was the property of Ruby E. Witt as alleged in the indictment. The Court held:—

"The only error assigned by Watson on this, his appeal from a conviction of armed robbery, is that

'the Court erred by overruling his motion for a directed verdict of not guilty, because the state failed to prove that the money taken in the robbery was the property of Ruby E. Witt as alleged by the indictment.'

"Mrs. Witt testified that she did 'operate a grocery store' and had in her employ 'I only have one boy.' While she was alone in this store on the occasion in question, the defendant entered and, after attacking and cutting her with a knifelike instrument, he forced her to take $135 from the cash register and place it in his pocket. She was then forced to lie on the floor of the store during his departure.

"(1) Assuming, in so far as it applied to this case, that the above undisputed evidence is insufficient evidence of absolute ownership by Mrs. Witt of this money, it is in that event, however, proof of the possession by her as agent or bailee of the owner.

"(2) In Hill v. State, 38 Tenn. 454, 455, the indictment alleged the stolen bank notes to be in Bates, a constable who had collected notes for Hall. Hall told him to leave the money with Mrs. Bates and he would call for it. The money was stolen while thus in her possession. In holding that there was no variance, as a matter of law, between the allegation of the indictment that ownership was in Bates and the evidence

that the true ownership was in Hall and possession in Bates' wife by direction of Hall, the Court, after stating that the possession of the wife was the possession of her husband, the constable, who had a special property therein, stated the law thus:

"'* * * It is well settled, that whenever a person has a special property in a thing, or holds it in trust for another, the property may be laid in either. As for instance, goods left at an inn, or entrusted to a person for safekeeping, or to a carrier to carry.'

"In Jones (& Bass) v. State, 166 Tenn. 102, 104, 59 S.W.2d 501, this Court quoted approvingly from 17 R.C.L., page 72, as follows:

"'The exact state of the title of stolen property is of no particular concern to the thief, except that it must have been in someone else; hence evidence of possession is ordinarily sufficient proof of ownership; and this is true although the one in possession may have held the property as bailee, trustee, or otherwise having only a special interest, and not a general ownership of the property.'

"The rule of law just stated, and so well established, illustrates the fact that if this indictment had charged Watson with larceny only, then the allegation of ownership of this money in Mrs. Witt would have been sufficient, if it be assumed that the actual ownership was in some other person. This is because, in any event, she was in possession as agent or bailee of that owner.

"(3) 'Robbery is but an aggravated larceny.' Crews & Crenshaw v. State, 43 Tenn. 350, 353. Therefore,

any allegation of ownership of the property stolen which is sufficient under an indictment for larceny so as to not be a variance or is sufficient proof of the allegation of the indictment is, by the same token, sufficient in an indictment that she was the owner."

Watson v. State also cites Hill v. State, 38 Tenn. 454 in which the defendant Hill was indicted of a charge of larceny of bank notes.

In the case of A. S. Hill v. State, supra, Bates was a constable and had collected notes for John F. Hall, a creditor. He told Hall he had the money and would bring it or send it to him; whereupon Hall told him to leave it with Mrs. Bates, the wife of Bates and he would call and get it, he, Bates, being often, necessarily, absent from home. While Bates was away from home the money was stolen. The indictments charged the money was property of the constable Bates, although Bates was away from home. The Court held that the ownership of the property was well laid, that the possession of the wife was the possession of the husband, and the special property was in him.

In 52A C.J.S., cited in the Attorney General's brief, on the subject of larceny, there is an interesting discussion, and we think is a sound authority for the proposition that in an indictment for larceny ownership may be laid in the person who had possession of the personal property at the time it was stolen.

" 'Considered as an element of larceny, "ownership" and "possession" may be regarded as synonymous terms, for one who has a right to the possession of goods as against the thief, as far as he is concerned,

is the owner of them. Ordinarily, the actual status of legal title to stolen property is no concern of the thief, and it is not a defense that title to the property is in one other than the person from whom it is taken. The title which supports a change of larceny need not be absolute; and the taking of goods from one having a special ownership or interest or any legally recognizable interest in them may constitute larceny. So, removal of property from the possession of a bailee is sufficient to support a charge of larceny.' (52A C.J.S. Larceny 13.b., pages 437-438.)

" 'The fact that the person from whom the property was stolen himself acquired it illegally is not a defense in a prosecution for larceny. The rule is applicable to the theft of property acquired by gambling or the illegal sale of intoxicating liquors and it is immaterial that the property taken from the possessor was stolen by him or was obtained by him from a thief.' (52A C.J.S. Larceny 19, page 441.)

" 'When the general owner of the stolen property is himself the thief, the ownership must necessarily be laid in the special owner from whose lawful possession the chattels were taken. Subject to this exception, the ownership of chattels ordinarily may, in an indictment or information for their theft, be laid either in the owner, or in the person who at the time of the theft was in the actual peaceable possession of them, although such person may have no property therein other than the right of possession as against the thief, and notwithstanding he acquired that possession fraudulently. As the rule is sometimes expressed, ownership may be laid in the general owner, or in one

who had possession of the property as a special owner, whether or not the special owner would be responsible to the real owner.' (52A C.J.S. Larceny 81 (1).a., pages 534-535.)

" 'In an indictment for the theft of a chattel which was stolen from the possession of one who had found it, the ownership may be laid either in the finder or in the owner; but, where the finder is himself the thief, the ownership must necessarily be laid in the true owner.

" '*Stolen property*. The ownership of goods which have been stolen from one who has himself stolen them, or received them from a thief, may be laid either in the true owner or in the first thief, or the receiver, according to whoever had the possession at the time of the second theft.' (52A C.J.S. Larceny 81 (2).e., page 541.)"

Young v. State, 185 Tenn. 596, 206 S.W.2d 805, cited in defendant's brief, was a burglary and larceny case, the court said:

"(5) The only other contention is that the trial court should have granted a new trial on account of an alleged variance between the owner of the building entered as averred in the indictment and the proof. The ownership of the building was averred in the indictment to be in 'Clifton's Inc.' The evidence shows that the building belonged to an individual but that it was occupied by Clifton's Inc., under a lease contract.

"It is well settled that burglary or house-breaking is not an offense against the ownership and legal title,

and that ownership of the building alleged to have been burglarized not only may but should be laid in the actual occupant. 9 C.J., Burglary, 80, pp. 1044, 1045; 12 C.J.S., Burglary, 38."

It was held in Busler v. State, 181 Tenn. 675, 184 S.W.2d 24 (1944) as follows:

"(1) The crime of larceny clearly involves ownership and possession of goods and chattels. It has been characterized as a criminal trespass upon the right of possession. Fitch v. State, 135 Fla. 361, 185 So. 435, 125 A.L.R. 360. There can be no doubt that there must be an owner of the property taken and there must also be a trespass to the possession of the owner, either actual or constructive. 'Without this trespass there can be no larceny; and there can be no trespass unless the property was in possession of the one from whom it was allegedly stolen.' 32 Am.Jur. Larceny, sec. 15; Jones and Bass v. State, 166 Tenn. 102, 59 S.W.(2d) 501, citing State v. Missio, 105 Tenn. 218, 222, 58 S.W. 216. The following is also cited with approval in Jones and Bass v. State, supra:

" 'In 17 R.C.L., p. 72, it is quite aptly said that: "The exact state of the title of stolen property is of no particular concern to the thief, except that it must have been in someone else; hence evidence of possession is ordinarily sufficient proof of ownership; and this is true although the one in possession may have held the property as bailee, trustee, or otherwise having only a special interest, and not a general ownership of the property." ' "

The petition to rehear is denied.

WALKER, P. J., and HYDER, J., concur.