ARTHUR TILLERY, JR., Plaintiff in Error, v. STATE
OF TENNESSEE, Defendant in Error.
—474 S.W.2d 178.

October 13, 1971.

Certiorari Denied by Supreme Court December 6, 1971.

Hal H. Clements, Jr., Knoxville, for plaintiff in error.

David M. Pack, Attorney General, Thomas E. Fox, Deputy Attorney General, Nashville, Ronald A. Webster, District Attorney General, Richard Stair, Jr., Assistant Attorney General, Knoxville, for defendant in error.

MITCHELL, J. Arthur Tillery, Jr., the defendant was tried in the Criminal Court of Knox County, Tennessee, on May 28, 1970, on an indictment charging larceny of a $350.00 check. The trial jury reported a verdict of guilty and fixed the punishment at three years in the State Penitentiary. After the motion for a new trial was heard and overruled the trial judge Honorable J. Fred Bibb, Judge sitting by designation of the Chief Justice,

pronounced judgment and sentence upon the defendant of not less than three (3) years nor more than three (3) years in the State Penitentiary. He was rendered infamous and adjudged to pay the costs. From this conviction and judgment the defendant has appealed and assigned errors.

According to the State's proof, the defendant Tillery, a used car dealer in Knoxville in July, 1968, bought from William S. Thornhill, General Manager of East Tennessee Motor Company, a 1963 Ford automobile for which the defendant paid a $350.00 check and took the car away with him.

The $350.00 check issued by the defendant was proccessed through the business offices of East Tennessee Motor Company and presented at the bank where payment was refused and the check returned to the seller.

Mr. Thornhill, the salesman, explained in his testimony that they did not give the defendant a title to the car as it took two or three days for the normal procedure of typing up the papers and waiting for the matters to be cleared.

Mrs. Florence Shelley, Office Manager of the East Tennessee Motor Company had the responsibility of seeing that the receipts for payments were written, that cards were properly filled out, bills paid and bank deposits made. She had possession of the' $350.00 check of the defendant after it had been returned by the bank upon the seller's paying the bank $350.00.

Mrs. Shelley testified that on September 12, 1968, Mr. Carley Rutherford, their used car manager, brought the

defendant into the office and said, "this is Arthur Tillery, and he wants to pay you for the Copper Ridge check (the $350.00 check in question) which you have." She identified the defendant in the courtroom. She got the check from her desk and was holding it in her hand, waiting for the defendant to lay his money down, and almost instantly Mr. Tillery took the check and started moving out the door, "he just reached for it just like that." She said, "Mr. Tillery you didn't pay for the check." He said, "I'm not going anywhere." The defendant was going through the showroom, and she asked him again to pay for the check. The defendant went on out, got in an automobile and hurriedly drove away taking the check with him. Several of the men asked him not to leave with the check. He said, "let East Tennessee Motors prove they ever had a check."

Mrs. Shelley further testified the defendant never returned the check. That he had on several occasions promised to come in and pay the check. She identified the microfilm copy of the $350.00 check, over objection of the defendant, and the exact copy of the check was filed as exhibit to her testimony.

According to Mr. Carley B. Rutherford, the defendant in company of a Hutchinson boy came by the dealership, Tillery said he wanted to pick up a check he had given them, and they told Mr. Rutherford they wanted to pick up a title for a '63 Ford they had bought. The Hutchinson boy said he wanted the title for the car. Mr. Rutherford explained to him they had sold the car to Mr. Tillery who had not made the check good and they could not give a title till they got their money for the car. That Mr. Tillery said he wanted to get the check and Mr.

Rutherford assumed he wanted to pay it and took him to the Office Manager's desk and told Mrs. Shelley that Mr. Tillery wanted the check for the '63 Ford he had bought from them. Mrs. Shelley gave the defendant the check who started walking away, Mrs. Shelley wanted the money and said, "that's $350.00." The defendant kept on walking. Mrs. Shelley and Mr. Rutherford followed him. Mr. Rutherford asked him whether he was going to pay the check with cash or what was he going to do. The defendant kept looking at the check and then walked on. When the defendant got outside he said, "you can't even prove I gave you a check."

Johnny McCoy testified he saw Mr. Rutherford and the defendant talking. That he reminded the defendant Tillery that if he left with the check it would be just the same as stealing an automobile or a typewriter or anything they had. The defendant replied, "I want to see you prove I even wrote you a check in the first place." That Mr. Mullins tried to stop him and was trying to get in the car with him. That he did not seem to have good control of the car and was driving too fast.

The defendant testified in his own behalf. That he bought the car in question and told them he needed the title the next day if he could get it. That they told him he could pick it up the next day. That he called back about three days later and they said the title had not come in, and he did not put the funds back in the bank to cover the check. That he traded the car. That he thought he was going to get a title. That he would have paid for the car but they didn't have any title to give him. That he did not see any reason in paying $350.00 for something he could not get rid of. That he

junked the car. That he lost $300.00 on it. That they indicted him for a bad check but it had been nolle prossed.

He denied that the East Tennessee Ford told him they would not give him title till he made the check good.

That he did not take the check from them, that they gave it to him. That after about five of them were waiting to take the check away from him he happened to leave with it. That he told them, "let me see them take the check if they thought they could." That he went down there with the intention of paying the check and they got smart with him, and he just took it.

When asked by his counsel if he took the check with the idea of permanently depriving them of it, he answered, "well, I didn't have no title, and I didn't see no reason to give them $350.00 for something I couldn't get rid of, tore up."

By the defendant's first assignment of error it is his insistence that the evidence preponderates against the verdict and in favor of the defendant's innocence. In reviewing the evidence under this assignment we are bound by the rule "that a jury's verdict of guilt, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in the evidence in favor of and establishes the State's theory of the case. Under such a verdict, the presumption of innocence, which the law accords an accused prior to conviction, disappears and is replaced by a presumption of guilt which puts upon him the burden of showing upon appeal that the evidence prepon-

derates against the verdict and in favor of his innocence. We may review the evidence only to determine whether it preponderates against the verdict, and in doing so, we must take the verdict as having established the credibility of the State's witnesses. The verdict will be disturbed on the facts only if the evidence clearly preponderates against it and in favor of the innocence of the accused. Pryor v. State, 217 Tenn. 695, 400 S.W.2d 700; Monts v. State, 218 Tenn. 31, 400 S.W.2d 722; Patterson v. State, 218 Tenn. 80, 400 S.W.2d 743; Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523; McBee v. State, 213 Tenn. 15, 372 S.W.2d 173; Kirby v. State, 214 Tenn. 296, 379 S.W.2d 780; Gann v. State, 214 Tenn. 711, 383 S.W.2d 32.''

''The rule that the credibility of the witnesses and conflicts in the testimony are all settled by the verdict of the jury, 'makes unnecessary and, indeed, in appropriate, a detailed discussion of that evidence, pro and con, * * * in stating what we conclude the material facts to be as established by that testimony.' Hargrove v. State, 199 Tenn. 25, 28, 281 S.W.2d 692, 694; Morrison v. State, 217 Tenn. 374, 397 S.W.2d 826, 400 S.W.2d 237.''

Wharton's Criminal Law and Procedure, Volume 2, section 457, pages 91 and 92 says:

''One who openly takes property of another without the latter's consent, in settlement of or as security for payment of a valid debt due him by the owner of the property, is not guilty of larceny if he in good faith believes that he has a legal right to do so. Conversely, *he is guilty of larceny if he knows that the*

*debt is not valid or that he does not have the legal right to seize the property."*

Here the defendant is bound to have known he had no right to the check without paying for it because he says he went there with the intention of paying it until they got smart with him. In addition to that he was warned by the employees not to take the check, not to go away with it, that if he did it would be the same as stealing a typewriter, automobile or any other personal property.

■ The questions of fact are settled by the jury's findings and the evidence does not preponderate against the verdict and in favor of the defendant's innocence.

The first assignment of error is overruled.

The defendant's second assignment of error is:

"2. Because the Court erred in charging as follows:

"You have heard some testimony concerning a title to the automobile which the defendant is alleged to have bought with the check in question in this cause. I charge you that whether or not he was delivered a title is no defense to stealing, if he did steal the check in question."

"Anyone purchasing an automobile who is not delivered the title to the vehicle has a plain or adequate remedy in Law and Chancery."

■ There is no merit in this assignment. We think the court's instruction to the jury was a correct statement of the law on this subject.

The defendant was an automobile dealer and must have known it would take some time, at least a day or two, to obtain a title to the car. He bought the car from the salesman at East Tennessee Motor Company and at the time issued and delivered to the seller his check for $350.00 in payment for the car which he took away with him. When the check was presented by the payee to the bank, payment was refused by the drawee bank. Several weeks later the defendant went back to East Tennessee Motor Company, he says in his testimony, with the intention of paying the check. Of course if he intended to pay the check he knew he was not entitled to it until he did pay it. There was no bona fide claim to the check. He took the check and carried it away.

We find no error in the court's charge.

We hold that the defendant was properly convicted of larceny.

The judgement is affirmed.

Galbreath, J., concurs.

Oliver, J., (dissenting).

I cannot agree that the defendant's own admittedly worthless check could be a subject of larceny.

It is elementary that personal property and goods must have some value in order to be the subject of larceny. 52A C.J.S. Larceny, sec. 2b.

The value of the property allegedly stolen must be specified in the indictment. 52A C.J.S. Larceny sec. 78.

The second count of the indictment in this case, under which the defendant was convicted, does not charge that his check in the face amount of $350 had any value. All of the larceny statutes of this State clearly contemplate that goods and chattels must have some value in order to be the subject of larceny. TCA secs. 39-4201, et seq.

Of course, the general rule is that it is not necessary that personal property have a *market value* in order to be the subject of larceny, and it is sufficient if it be valuable to the owner, and the extent of the value only affects the grade of the crime. Osborne v. State, 115 Tenn. 717, 92 S.W. 853. It is also true that "In giving consideration to the value of stolen property, the law draws no fine distinctions in favor of one who takes it from the true and lawful owner by criminal trespass except to determine the grade of the offense." Busler v. State, 181 Tenn. 675, 184 S.W.2d 24. But neither *Osborne* nor *Busler*, nor any other case decided by the Supreme Court of this State, has ever intimated that the element of value may be dispensed with in larceny cases or that valueless property may be the subject of larceny.

Written instruments, including instruments evidencing debt or for the payment of money, must have value to be the subject of larceny. 52A C.J.S. Larceny sec. 60(2)b. The value of a check is usually held to be the amount for which it is drawn, but, if the check is worth less than that amount, its actual or market value is the determinative factor. *ibid.*

Of course, when one issues a check knowing full well that he has no account in the bank upon which it is drawn, such a check is clearly and patently issued in violation of law and is wholly worthless and void. Such a check

is not the subject of larceny. Rasbury v. State, 136 Tex.Cr.R. 506, 126 S.W.2d 972. A written instrument issued contrary to law is void and is not the subject of larceny. 52A C.J.S. Larceny sec. 3(4)d.

Clearly, then, the defendant's worthless check was wholly void and without any value whatsoever. Who would have bought or accepted it knowing its character? In argument before this Court the Deputy Attorney General conceded that the defendant's check was valueless except as evidence of indebtedness. But, obviously, it did not even have intrinsic value to the payee, for patently an action by the payee to recover the debt the defendant owed it for the second-hand automobile did not in any way depend upon its retention of the defendant's worthless check; that check was wholly unnecessary to the prosecution of such an action of debt, and the payee's right to such an action was neither impaired nor lost by loss of the worthless check. As far as that is concerned, the proof shows that the bank in which the check was deposited made a microfilm copy of it which the payee had and introduced in evidence.

I would reverse the judgment of the trial court and dismiss this case. The check is still worthless.