STATE of Tennessee, Appellee,

v.

Alvin Emmett LAND, Jr., Appellant.

Court of Criminal Appeals of Tennessee, at Nashville.

Oct. 25, 1984.

Hugh R. Poland, Jr., Poland & Poland, Clarksville, for appellant.

W.J. Michael Cody, Atty. Gen., David M. Himmelreich, Asst. Atty. Gen., Nashville,

Patrick McCutchen, Dist. Atty. Gen., Clarksville, for appellee.

## OPINION

TATUM, Judge.

The defendant, Alvin Emmett Land, Jr., was convicted of grand larceny and sentenced to serve a 4-year term in the State penitentiary. He raises two issues on this appeal: (1) that the evidence was insufficient to support the verdict, and (2) that the court committed reversible error by allowing into evidence the results of a polygraph examination of the defendant. We find no reversible error and affirm the judgment below.

We first consider the issue attacking the sufficiency of the evidence. Daniel Joe Armstrong testified that he observed his boat, motor and trailer parked in its usual spot in front of his apartment building at approximately 1:00 A.M. on May 12, 1983. Around 4:30 A.M. that same morning, Mr. Armstrong noticed that his boat, motor and trailer were missing.

At approximately 3:30 A.M. on May 12, 1983, Officer Thomas Nelson of the Montgomery County Sheriff's Department stopped the defendant and asked for his driver's license, car registration and registration for the boat that he was towing. The defendant could produce only an expired driver's license. He told the officer that he owned both the boat and the car and that he had, but could not find, proper registration papers. Moments after allowing the defendant to leave, the officer received a dispatch describing a stolen boat, motor and trailer matching those that he had seen the defendant towing. The officer then caught up with the defendant, stopped him and made an arrest. After being arrested, the defendant signed a statement to the effect that he had found the boat around 10:00 o'clock the previous night while he had been lost on a back road. He thought the boat was stolen because four white males ran away from the rear of the boat when he happened upon them.

The defendant offered no proof other than his own testimony. He testified as follows:

"... On May the 11th, or you can say the 12th, that's when I got arrested. I was coming in from Texas and I missed Dickson and Waverly exit so I went all the way down to Nashville, took Nashville exit. From there I come up through, I guess, 41–A, coming from Nashville. From there I decided to take one of the side roads coming in through Gratton Road instead of taking the highway all the way around. From there I was coming up one of the ravines or valley, as Mr. Nelson stated, and I seen this truck with people in it take off. From there I decided the boat was stolen. From there I picked it up and put it on my car hitch. It did not fit the ball of my car. From there I tied it on with the rope that was there on the boat itself, walked around the boat and found some nuts. From there I took the boat and was headed up the road there. I seen Mr. Nelson come or didn't see him but his lights were shining. From there I slowed down 'cause my car was giving me a little trouble. From there Mr. Nelson turned on his lights and stuff and I waved him around. From there he came on the speaker and said, 'Please stop your car.' From there I stopped, we got out and we talked, and a few minutes later I told him where I was going and everything and he asked me for papers and stuff on my car and everything and I told him well, they are in my black bag, somewhere in my car. From there he let me go and then, I guess about a fourth of a mile down the road, he stopped again and said I was under arrest. From there I didn't say no more."

In claiming that the evidence was insufficient to support the verdict, the defendant emphasizes that no one witnessed the boat, motor and trailer being removed from Mr. Armstrong's premises. He argues that his own testimony, in concert with the statement he gave to the police, gave a reasonable account of how he came into possession of these goods, and, as such, was sufficient to raise a reasonable doubt in the minds of rational jurors.

■ There is no validity in the defendant's argument. He is guilty of larceny by his own testimony. The offense of larceny does not require that goods be taken from the possession of the true owner. Larceny is defined as "the felonious taking and carrying away the personal goods of another." T.C.A. § 39–3–1101. To be guilty of larceny, a defendant must only take possession from another, including from a thief.

"The fact that the person from whom the property was stolen himself acquires it illegally is not a defense in a prosecution for larceny.... (I)t is immaterial that the property taken from the possessor was stolen by him or was obtained by him from a thief."

52A C.J.S., *Larceny*, § 19 (1968) (quoted with approval in *Campbell v. State*, 2 Tenn.Crim.App. 39, 450 S.W.2d 795, 804 (1969)).

■ We further note that Tennessee follows the general rule that an unsatisfactorily explained possession of very recently stolen property may, in light of surrounding circumstances, support a conviction of larceny. *State v. Hatchett*, 560 S.W.2d 627 (Tenn.1978). The inference of guilt which may arise from the proven fact of possession of recently stolen property is not destroyed by contradictory evidence and does not vanish when a defendant provides explanation; rather, the inference remains to be weighed by the jury against the defendant's explanation. *Bush v. State*, 541 S.W.2d 391 (Tenn.1976). Both the State's version of the facts and the defendant's version establish that the defendant is guilty of grand larceny. The evidence more than meets the standard required by *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and Rule 13(e), T.R.A.P.

The defendant next contends that the trial court committed reversible error by allowing into evidence the testimony of a polygraph examiner regarding the results of a lie detector test given the defendant.

**592**

As a result of settlement negotiations, the defendant and the State entered into a written agreement regarding the polygraph test. The State agreed to dismiss the charges if defendant passed the test without the use of drugs. Defendant, in turn, agreed to stipulate to the admissibility of the test results if the results favored the State. The agreement expressly stated that defendant was aware "that lie detector tests are not admissible in the absence of (his) agreement." Courts faced with the same question with which we are confronted have reached different conclusions on the issue of whether the results of lie detector tests should be admissible in evidence upon prior stipulation. See generally Annot. 53 A.L.R.3rd 1005 (1973) (Supplement 1984).

Tennessee follows the general rule that the results of a lie detector test are inadmissible in evidence and that the circumstances surrounding the taking or not taking of such tests are likewise inadmissible. *Hembree v. State*, 546 S.W.2d 235, 240 (Tenn.Crim.App.1976). The reason for the rule is that polygraph tests are "inherently unreliable." *State v. Plummer*, 658 S.W.2d 141, 143 (Tenn.Crim.App. 1983). In our view, evidence which is inherently unreliable, such as a polygraph test, should not be admitted. A stipulation does not cure the infirmity of unreliability. This type of evidence, if admitted on behalf of either the State or the defendant, could frequently result in erroneous verdicts. We think that this evidence is dangerous in that it could easily convict the innocent or acquit the guilty.

The State argues that to ignore the prior agreement regarding the results of the polygraph examination would be to allow the defendant a double chance to negate its effect, saying that the defendant would have alleged prosecutorial misconduct if he had passed the test and the State had refused to dismiss the indictment. The State says that since it would have been bound by the agreement, that the defendant should also be bound. We hold that neither the State nor the defendant was bound by the stipulation for the reasons above stated. We reiterate that the results of polygraph examinations are not admissible in Tennessee on behalf of either the State or the defendant, over timely objection, even by prior stipulation.

We must yet determine whether, considering the whole record, the error more probably than not affected the judgment. See Rule 36(b), T.R.A.P. As stated, the defendant was apprehended immediately after the theft while towing the stolen property. He falsely told the officer that the property belonged to him and that he had documentary evidence of ownership. Further, the defendant, by his own testimony at trial, is guilty of the offense, as previously discussed. We can find no way in which the evidence might have affected the judgment under the circumstances. Nor would the error result in prejudice to the judicial process. It results that we must find the error to be harmless.

The judgment of conviction is affirmed.

O'BRIEN and DAUGHTREY, JJ., concur.