**STATE of Tennessee, Appellee,**

v.

**Nathaniel EVANS, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Jan. 26, 1984.

Permission to Appeal Denied
April 9, 1984.

H. Richard Bolen, Knoxville, for appellant.

William M. Leech, Jr., Atty. Gen., Steven A. Hart, Asst. Atty. Gen., Nashville, William E. Dossett, Dist. Atty. Gen., James R. Dedrick, Asst. Dist. Atty. Gen., Knoxville, for appellee.

## OPINION

DUNCAN, Judge.

The defendant, Nathaniel Evans, was convicted of third degree burglary—safecracking, and grand larceny. These convictions were the triggering offenses for the subsequent finding by the jury that the defendant was an habitual criminal with respect to each conviction. He was sentenced to the penitentiary for life for each offense, the sentences to be served consecutively.

In this appeal the defendant contests the sufficiency of the evidence regarding his burglary conviction, says the proof failed to establish a sufficient value to support his grand larceny conviction, complains that he was denied a second opportunity to voir dire the jury on the habitual criminal phase of the trial, and contends that the habitual criminal charges should have been dismissed, arguing that his guilty pleas to the underlying felonies were not voluntarily made. We find no merit to his complaints.

The evidence in this case showed that the defendant had been a resident of the Knox County-Knoxville Detoxification Center in the summer of 1982. He had been dis-

charged from the Center several days before the present burglary occurred. On Sunday, August 22, 1982, at approximately 8:00 a.m., an employee came to work and around 10:00 a.m., he found that a screen had been cut or pulled out of a window in the back of the counseling office. The screen was in place on the prior evening. The employee, about an hour later, discovered that the Executive Director's office had been entered and a locked filing cabinet therein had been pried open. The drawers of the filing cabinet were open and various items had been tossed around the office. Several microfilm boxes, containing patients' records and which had been in the locked filing cabinet, were found on the couch. These microfilm boxes had not been removed from the filing cabinet since they had been placed there about a year earlier. Fingerprints were found and lifted from one of the microfilm boxes. A fingerprint expert testified that he found a positive comparison of the defendant's left index fingerprint with one of the fingerprints he lifted off one of the microfilm boxes. The expert opined that the latent print was recent and had probably been placed on the box within twenty-four (24) hours prior to the time he lifted it.

Further, the evidence showed that a cash box had been taken from the top drawer of the filing cabinet. The cash box contained seventy dollars ($70.00) in cash, an IRS refund check in the amount of one hundred forty-six dollars ($146.00), fifteen (15) World's Fair tickets, some controlled substances and some liquor. All of these items were missing.

The only witness offered by the defendant was a counselor who worked at the Center. He testified that he met with the defendant in the Executive Director's office three (3) or four (4) days before the defendant left the program, and that the defendant had left the program two (2) or three (3) days prior to the burglary. He said he had never seen any microfilm boxes laying around in the Director's office and did not know the boxes were stored in there. He stated that patients were never allowed access to the filing cabinet, which to his knowledge was always kept locked.

■ At the habitual criminal phase of the trial, the State presented proof that the defendant had fourteen (14) prior felony convictions. Unquestionably, the defendant's prior convictions established his status as an habitual criminal, as defined in T.C.A. § 39–1–801.

First, the defendant argues that the evidence is insufficient to support his conviction for third degree burglary—safecracking.

Any person who, with intent to commit crime, breaks and enters any building, and opens or attempts to open any vault, safe, or other secure place therein by any means is guilty of third degree burglary. T.C.A. § 39–3–404(b)(1).

■ In the present case, there was sufficient evidence to show a breaking and entry into the building. The locked filing cabinet was broken into and property was stolen from a microfilm box that prior to the burglary was in the filing cabinet. The defendant's fingerprint was found on the microfilm box. Fingerprint evidence alone may support a conviction and the weight to be given to such evidence is for the jury's determination. *Jamison v. State*, 209 Tenn. 426, 354 S.W.2d 252 (1962); *State v. Lequire*, 634 S.W.2d 608 (Tenn.Cr.App. 1981). Further, we point out that the record contains no evidence that could reasonably be said to show that the defendant's fingerprint could have gotten on the microfilm box in some innocent manner. *See State v. Cupp*, 215 Tenn. 165, 384 S.W.2d 34 (1964).

We find that the evidence meets the sufficiency requirements set forth in T.R.A.P. 13(e) and *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Another complaint by the defendant is that the evidence failed to show that the value of the stolen items was in excess of two hundred dollars ($200.00), so as to support a conviction for grand larceny. T.C.A. § 39–3–1103.

The items stolen consisted of seventy dollars ($70.00) in cash, a check to the Center from the Internal Revenue Service in the amount of one hundred forty-six dollars (146.00), fifteen (15) World's Fair tickets, a half full bottle of Dilantin, a half full bottle of Tylenol, two (2) half full half-pints of liquor, and six (6) blank checks from the Center's operational check book.

Other than the values that would be attributed to the stolen cash of seventy dollars ($70.00) and the stolen IRS check in the amount of one hundred forty-six dollars ($146.00), the record is lacking in proof of any other values. The State argues that the value of the IRS check should be construed as one hundred forty-six dollars ($146.00), the face value of the check, and that by adding this value to the seventy dollars ($70.00) cash, the combined values exceed two hundred dollars ($200.00), thus warranting the defendant's conviction of grand larceny. The defendant argues that the face value of the IRS check does not serve to represent the true value of the check, and insists that the evidence is insufficient to show that this check had any value, let alone a value of one hundred forty-six dollars ($146). Thus, the defendant contends that with the purported value of the IRS check excluded from consideration, the remaining value of the stolen property is less than two hundred dollars ($200.00) and therefore the proof is insufficient to support his conviction for grand larceny.

We do not find any Tennessee authority on the precise question of the value that is represented by a check that is issued by the maker to a named payee, but not yet endorsed by the latter. In *Tillery v. State*, 4 Tenn.Cr.App. 569, 474 S.W.2d 178 (1971), our Court was concerned with a check in the amount of three hundred fifty dollars ($350.00) which was issued by the defendant to a car dealer in payment of a car. The check was not honored and was returned to the payee. Subsequently, the defendant stole the worthless check from the payee. The Court's majority opinion did not discuss the case from the standpoint of the value of the check, but apparently construed the value at three hundred fifty dollars ($350.00), because the Court affirmed the defendant's conviction of "larceny of a check in the amount of $350.00," for which he received a penitentiary sentence of three (3) years, such sentence indicating that the conviction was for grand larceny and not petit larceny. In *Tillery*, Judge Oliver dissented on the grounds that a worthless check had no value and could not be the subject of larceny.

In 52A C.J.S. *Larceny*, § 60(2)(b), we find the following:

The value of a check is usually held to be the amount for which it is drawn, but, if the check is worth less than that amount, its actual or market value seems to be the determinative factor.

The above rule seems to be generally followed in other jurisdictions.

In *State v. McClellan*, 73 A. 993, 82 Vt. 361 (1909), the Court held that a check payable to the order of the holder, though unindorsed, could be the subject of larceny, and its value would be the amount it represented.

In *Bigbee v. State*, 364 N.E.2d 149, 173 Ind.App. 462 (1977), the Court was concerned with the value of a check that had been made payable to cash. The Court held that the amount written on the face of a bearer instrument represented its value.

In *People v. Marques*, 184 Colo. 262, 520 P.2d 113 (1974), the Court was concerned with the value of stolen checks where the checks bore a restricted endorsement "for deposit only." The majority of the Court held:

[T]hat the *prima facie* value of a check is its face value. (citation omitted). This rule comports with the general rule that the value in a theft case is market value, where market value is what a willing buyer will pay in cash to the true owner for the stolen item. (citation omitted). Where a check is the thing to be valued, the willing buyer is normally the drawee bank. In the overwhelming majority of ordinary commercial transactions, the drawee bank will pay the face amount of

the instrument, or the drawer will make good the instrument. (citation omitted). Therefore, we hold that the face amount of the instrument is presumptive evidence of its value. (citations omitted). Here, no evidence was produced to rebut the logical inference that Empire Supply [the theft victim] was entitled to receive and would receive the face amount of the checks.....

520 P.2d at 116–17. The *Marques* Court rejected that defendant's contention that a restrictive endorsement on the checks made them valueless on the open market, saying:

The value of the thing lost is not limited to what the thief could realize on the instrument.... [T]he loss is measured by what the owner could expect to receive for the instrument. The restrictive endorsement is only for the protection of the indorser and does not lessen the value of the check in any way.....

520 P.2d 117.

In *Marques*, two (2) Justices dissented on the grounds that the value of a restrictively endorsed check was not necessarily equal to the face amount of the check.

■ From our review of the authorities, we are led to the conclusion that the rule to follow is that in the absence of any proof to show a lesser value, then the amount written on the face of the check represents its true value.

■ In the present case, we are neither dealing with a worthless check, as in *Tillery*, nor even one with a restrictive endorsement, as in *Marques*; rather, the check in question here is an unendorsed IRS refund check. Obviously, the Center was entitled to receive and would receive the face amount of the check upon proper negotiation and presentation. The check was worth the amount of one hundred forty-six dollars ($146.00) to the Center, and thus we have no hesitancy in holding that the value of the check here is represented by the face amount of the check, namely one hundred forty-six dollars ($146).

Thus, with the value of the one hundred forty-six dollar ($146.00) stolen check together with the stolen cash of seventy dollars ($70.00) representing a total value of the stolen items in an amount exceeding two hundred dollars ($200.00), the evidence is sufficient to support the defendant's conviction for grand larceny.

■ In passing, we note that even if the proof had failed to establish a sufficient value to support a grand larceny conviction, it would only serve to reduce the defendant's offense to petit larceny, and this would not have aided the defendant's plight for the reason that petit larceny can also serve as a triggering offense for the enhancement of punishment for an habitual criminal. *See Smith v. State*, 584 S.W.2d 811 (Tenn.Cr.App.1979).

■ Next, the defendant complains about the trial court's denial to him of a second opportunity to voir dire the jury before the habitual criminal proceeding. Our Court has previously ruled on this issue adverse to the defendant's contention. *Moultrie v. State*, 584 S.W.2d 217 (Tenn. Cr.App.1979); *Moore v. State*, 563 S.W.2d 215 (Tenn.Cr.App.1978).

Also, the defendant claims that the trial court erred in refusing to dismiss the habitual criminal charges on the grounds that his guilty pleas to the underlying felonies had not been intelligently and voluntarily made. The trial court dismissed the motion on the grounds that it was untimely, and further because it constituted an impermissible collateral attack on the prior convictions.

■ Initially, we note that the appropriate procedure for challenging a prior conviction is through the Tennessee Post-Conviction Procedure Act. T.C.A. § 40–30–101, *et seq; see also Ellison v. State*, 549 S.W.2d 691 (Tenn.Cr.App.1976). In the present case, the judgments of convictions were facially valid and the trial court properly refused the defendant's attempted collateral attack of them.

■ Moreover, the defendant's allegations about his prior convictions are without substance. He alleges that when he

entered his guilty pleas, he was not advised that these convictions could be used to form the basis of a subsequent habitual criminal charge.

Even if he was not so advised, this would not operate to make his prior guilty pleas involuntary because such advice is not required by Tenn.R.Crim.P. 11(c) or by the advice criteria enunciated in *Mackey v. State*, 553 S.W.2d 337 (Tenn.1977). In *State v. Michael Allen Richards*, No. 867 (Tenn.Cr.App., Knoxville, December 17, 1982) our Court, in dealing with a similar complaint, noted in its opinion:

> The defendant questions whether his guilty pleas can be considered voluntarily and knowingly entered, given the fact that he was not specifically advised that the offenses to which he was pleading guilty would then be used to prosecute him in the habitual criminal phase of his prosecution. We conclude that the short answer to this question is that *Mackey* [553 S.W.2d 337 (Tenn.1977) ] requires no such advice, and we therefore affirm the judgment of the trial court.

*Id.* at 1. Richards argued that *Mackey* "requires the trial court to advise the defendant not only of the direct consequences of the plea, in terms of potential punishment on the charge to which the plea is directed, but also that the resulting conviction may constitute the basis for a subsequent habitual criminal charge." *Id.* at 2. The Court declined "to extend the rule in *Mackey* to mean that failure to advise the defendant that his plea may have consequences in terms of a recidivist charge will render his plea involuntary *per se.*" *Id.* at 3. The Court stated that the defendant's conviction "on the recidivist count was at most an indirect consequence of his guilty plea on the substantive charge and not, we think, a consequence contemplated by the *Mackey* court as one requiring advice by the trial court prior to acceptance of the defendant's guilty plea." *Id.* at 3.

The Court's reasoning in the *Richards* opinion is sound and we adopt that reasoning herein.

 Further, the defendant erroneously argues that the record before the trial court was lacking to show that he was represented by counsel at the time his prior guilty pleas were entered. The certified copies of the judgments on his underlying felonies show that he had counsel present at the time. Based upon all the foregoing, we find that the trial court properly denied the defendant's motion to dismiss the habitual criminal charges.

We find no error and the judgments are affirmed.

WALKER, P.J., and SCOTT, J., concur.