# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs February 23, 2012

## STATE OF TENNESSEE v. LASHAWN JOHNSON

**Appeal from the Criminal Court for Davidson County**
**No. 2009-D-3345     Cheryl A. Blackburn, Judge**

---

**No. M2010-02664-CCA-R3-CD - Filed May 10, 2012**

---

A jury convicted LaShawn Johnson ("the Defendant") of aggravated burglary and attempted theft of property valued at $1,000 or more but less than $10,000. On appeal, he raises two issues: (1) whether the evidence was sufficient to support his convictions; and (2) whether the trial court erred in ruling that the Defendant's prior theft convictions would be admissible should he testify. After a careful review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Nathan Moore, Nashville, Tennessee, for the appellant, LaShawn Johnson.

Robert E. Cooper, Jr., Attorney General & Reporter; Meredith Devault, Senior Counsel; Victor S. Johnson, III, District Attorney General; Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### General Background Facts & Procedure

A Davidson County grand jury indicted the Defendant on one count of aggravated burglary, Tenn. Code Ann. § 39-14-403, and one count of theft of property valued at $1,000 or more but less than $10,000, Tenn. Code Ann. § 39-14-103. A jury trial was held October 11-12, 2010. The jury convicted the Defendant on count one of aggravated burglary and on

count two of the lesser included offense of attempted theft of property valued at $1,000 or more but less than $10,000.[1]

The evidence at trial showed that on July 21, 2009, Darrmita Harris ("the victim") returned home from work to find that her Nashville apartment had been burglarized. The victim lived at the apartment with her four children, and she went to work that day at 7:00 a.m. and returned at 3:00 p.m. As she approached her apartment, she found the screen from her son's bedroom window crumpled up and lying on the ground. She also discovered her television on the sidewalk outside of her apartment. The victim called the police, and she provided them with an inventory of missing items, which she estimated to be worth $5,180. The missing items included, among other things, televisions, electronic game systems, jewelry, sneakers, prescription medicine, and a computer.

When the victim first contacted the Metro Police Department ("MPD"), she was unable to provide the officers with any possible suspects. MPD Officer William Mathis interviewed a handful of neighbors, but his investigation did not yield a suspect. Lynette Mace, who worked in the MPD identification section, processed the scene for latent fingerprints. Mace collected four samples from the crime scene, one of which came from the severed window screen. However, lacking a suspect, police officers did not have a print to compare to the samples.

The victim testified that a few days after the burglary she spoke with her neighbor, Stacy Abston. According to the victim, Abston, who lived upstairs in the same building, came by the victim's apartment for a cigarette.[2] The two discussed a different burglary that had occurred recently in the same apartment complex. The victim told Abston that the circumstances of that burglary sounded similar to hers. When the victim told Abston that the culprits had left her television in the parking lot, Abston replied that she had seen people with the victim's television but that she did not know at the time that it was the victim's property that they were taking.

According to the victim's testimony at trial, Abston told her that she saw a "tall, dark[,] muscular built man with a lot of silver jewelry on, [with] very, very low hair or no hair at all with a tall[,] slender[,] Caucasian female." The victim said that Abston told her

---

[1] Both parties erroneously assert in their briefs that the jury convicted the Defendant of the indicted theft offense rather than the lesser included offense of attempted theft.

[2] Officer Mathis did not recall interviewing Abston during his investigation on the day of the burglary.

the suspects were driving a white Ford Explorer. Abston's description of the male suspect reminded the victim of the Defendant.

The victim knew the Defendant and described their relationship as one of general associates or acquaintances. She stated that they occasionally spoke on the telephone, but she denied a romantic relationship. She said that the Defendant had visited her house on one occasion months prior, but he stayed for only ten minutes and did not venture past her living room. The victim also stated that the Defendant did not venture past her front door, but she clarified that her front door opened immediately into her living room.

After speaking with Abston, the victim retrieved her cell phone and showed Abston a photograph of the Defendant from a social networking website. The victim asked Abston whether the photograph of the Defendant depicted the man Abston saw taking the victim's property, and Abston replied that it did.

The victim called police officers and relayed the information that she learned from Abston. Abston subsequently met with MPD Detective David Achord, and she identified the Defendant in a photographic lineup. At trial, when asked to identify the person whom she saw moving the television, Abston said, "I guess that's probably him. I just remember the bald head."[3] Abston believed that the passage of time had affected her ability to identify the Defendant. When shown the police photographic lineup at trial, Abston identified the Defendant's photograph as the one that she selected during the original lineup. Abston recalled that the suspect was driving a truck or SUV, but she could not remember what color it was, although she believed it may have been white.

Abston's recollection of her conversation with the victim also differed to some degree. According to Abston's testimony, she was on her way to the apartment complex's garbage dumpster when the victim asked whether Abston had heard that the victim had been burglarized. Abston denied that she went to the victim's apartment and asked for a cigarette. Abston testified that she told the victim that on the day of the burglary, she saw a black male and a white female moving a large television along with some other items. She thought the man and woman were moving and later wondered why they left the television on the sidewalk. Abston testified that when the victim asked her what the man looked like, she replied that she "really couldn't remember." Abston said that the victim showed her pictures on her cell phone and that Abston identified a man as resembling the man whom she saw moving the television. However, Abston noted at trial that the picture on the phone was not very clear.

---

[3] We note that the trial transcript does not specifically identify the person whom Abston identified from the witness stand.

On cross-examination, the victim acknowledged that her apartment complex's maintenance crew had been in her apartment repairing a hole in a bedroom wall on the day of the burglary. The hole had been caused by leaking water from the upstairs apartment. She testified that the maintenance crew was scheduled to be at her apartment between 9:00 a.m. and 12:00 p.m. and return to check on the work at 12:30 p.m. She also conceded that she had given previous testimony that the crew was scheduled to be at her apartment from 10:30 – 11:40 a.m.

The victim also testified that on the day of the burglary, the Defendant called her while she was at work and asked her what she was doing. The victim replied that she could not talk right then and would call the Defendant when she got off work. The record does not reveal the time of this phone call. The victim surmised that after this phone call the Defendant knew she would not be at home until later that evening. The victim denied that she gave the Defendant permission to be in her home that day or to take any of the missing items.

Lynette Mace, who processed the victim's apartment for fingerprints, explained that in a residential burglary the entry and exit points contain the most evidentiary value. In this case, she determined that the point of entry was the front window of the apartment where the screen had been removed and the window opened. Mace was able to remove a latent print from the bent portion of the window screen. On cross-examination, Mace explained that when looking for prints, she looks for "ridge detail" and does not make assumptions about which part of the body the print came from. In addition to the print recovered from the window screen, Mace identified three other prints that she collected from various points in the apartment.

Belinda Shea, a latent print examiner for the MPD, testified as an expert in latent fingerprint identification. She examined the latent prints recovered by Mace and compared them to prints taken from the Defendant after he was arrested. Shea explained that she matched the Defendant's left hand palm print to the latent print found on the window screen. Shea noted that, like a fingerprint, a palm print contains unique markings, and no two people's palm prints are identical. The other three print samples were inconclusive due to smudging or inadequate ridge detail. On cross-examination, Shea admitted that she could not determine whether the palm print was placed on the window screen on the day of the burglary. Shea's fingerprint analysis was verified by her supervisor, Julia Hooper, who also testified as an expert in latent fingerprint identification at trial. Using a model of a window screen, Hooper illustrated that the portions of the discovered palm prints were located on sections of the screen that would be inaccessible with the screen attached to the window frame.

The Defendant did not testify and offered no proof.

Following deliberations, the jury convicted the Defendant of aggravated burglary and attempted theft of property valued at $1,000 or more but less than $10,000. The trial court sentenced him as a persistent offender to thirteen years for the aggravated burglary conviction and five years for the attempted theft conviction. The court ordered the sentences to run concurrently to each other but consecutively to a prior conviction for aggravated assault.

## Issues Presented

On appeal, the Defendant challenges the sufficiency of the evidence supporting his convictions. He also contends that the trial court erred in ruling that the Defendant's prior theft convictions would be admissible in the event that he testified.

## Analysis

### *Sufficiency of the Evidence*

The Defendant first challenges the sufficiency of the evidence supporting his convictions. Our standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e). After a jury finds a defendant guilty, the presumption of innocence is replaced with a presumption of guilt. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Consequently, the defendant has the burden on appeal of demonstrating that the evidence was insufficient to support the jury's verdict. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellate court does not weigh the evidence anew. Rather, "a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts" in the testimony and all reasonably drawn inferences in favor of the State. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, "the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom." Id. This standard of review applies to guilty verdicts based upon direct or circumstantial evidence. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (citing State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). In Dorantes, our Supreme Court adopted the United States Supreme Court standard that "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." Id. at 381. Accordingly, the evidence need not exclude every other reasonable hypothesis except that of the defendant's guilt, provided the defendant's guilt is established beyond a reasonable doubt. Id.

The Defendant was convicted of aggravated burglary, a Class C felony. See Tenn. Code Ann. § 39-14-403(b) (2006). Tennessee Code Annotated section 39-14-403(a) defines aggravated burglary as the "burglary of a habitation as defined in §§ 39-14-401 and 39-14-402." A "habitation" is defined as "any structure . . . which is designed or adapted for the overnight accommodation of persons." Tenn. Code Ann. § 39-14-401(1)(A) (2006). As relevant to this case, the Code provides that "[a] person commits burglary who, without the effective consent of the property owner enters a building and commits or attempts to commit a felony, theft or assault." Tenn. Code Ann. § 39-14-402(a)(3) (2006).

To prove entry, the State need not prove that a defendant's whole body made entrance into the building; entry of a hand or an instrument is sufficient. State v. Crow, 517 S.W.2d 753, 754 (Tenn. 1974). The intent required for the offense of burglary may be established by circumstantial evidence. State v. Holland, 860 S.W.2d 53, 59 (Tenn. Crim. App. 1993); Bollin v. State, 486 S.W.2d 293, 296 (Tenn. Crim. App. 1972). When one unlawfully enters an occupied dwelling that contains valuable property, a jury may infer that the entry was made with the intent to commit a theft. See State v. Ingram, 986 S.W.2d 598, 600 (Tenn. Crim. App. 1998) ("In the absence of an 'acceptable excuse,' a jury may reasonably and legitimately infer that by breaking and entering a building containing valuable property, a defendant intends to commit theft.") (citing Hall v. State, 490 S.W.2d 495, 496 (Tenn. 1973)).

The Defendant also was convicted of attempted theft of property valued at $1,000 or more but less than $10,000. Our criminal statutes provides that "[a] person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103 (2006).

> A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:
>
> (1) Intentionally engages in action or causes a result that would constitute an offense, if the circumstances surrounding the conduct were as the person believes them to be;
>
> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or
>
> (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the

person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Tenn. Code Ann. § 39-12-101(a)(1)-(3) (2006).[4] Criminal attempt is an offense one classification lower than the most serious crime attempted. Tenn. Code Ann. § 39-12-107(a) (2006). Consequently, attempted theft of property valued at $1,000 or more but less than $10,000 is a Class E felony. See Tenn. Code Ann. § 39-14-105(3).

In this case, the Defendant argues that his palm print on the crumpled window screen is the only evidence of his guilt and asserts that this evidence is insufficient to support his convictions. We disagree. Contrary to the Defendant's assertion, the palm print was not the only evidence against him. The evidence also showed that he called the victim on the day of the burglary and learned that she would not be home until later that day. Additionally, only days after the crime, Abston identified the Defendant in a police photographic lineup as the man whom she saw taking the victim's property on the day of the burglary. Abston's identification matched the description that she gave the victim.

We acknowledge that Abston's testimony differed to a degree from the victim's regarding the specific details of their conversation, and Abston's identification of the Defendant at trial was less than certain. Abston attributed these discrepancies to her faulty memory after the passage of time. However, a witness's identification of a defendant as the perpetrator of a crime presents a question of fact for the jury. State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993) ("It is well-established that the identification of a defendant as the person who committed the offense for which he is on trial is a question of fact for the determination of the jury upon consideration of all competent proof."). It was the jury's prerogative to weigh the credibility of witnesses and to resolve the conflicts in their testimony. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984). It is apparent from its verdict that the jury accredited Abston's testimony at least to the extent that her testimony corroborated the State's other evidence.

Moreover, even were we to construe the evidence as relying solely on the palm print, we nevertheless disagree with the Defendant's claim that his palm print standing alone was insufficient to sustain the convictions. The Defendant does not cite any law for this proposition. Indeed, to the contrary, Tennessee case law has long held that, although circumstantial in nature, fingerprint evidence alone is sufficient to support a conviction. See, e.g., State v. Cupp, 384 S.W.2d 34, 37 (Tenn. 1964); Jamison v. State, 354 S.W.2d 252, 255 (Tenn. 1962); State v. Evans, 669 S.W.2d 708, 710 (Tenn. Crim. App. 1984). In Jamison,

_____

[4] The jury charge in this case is not included in the record. Therefore, we are unable to determine which of these provisions the trial court utilized in its charge to the jury.

-7-

the Tennessee Supreme Court explained that "all the fingerprints that have ever been taken . . . run into an infinite number and no two have ever been found alike. The courts generally have reached the conclusion that evidence of this kind is infallible because of its conclusiveness." 354 S.W.2d at 255. Such evidence, however, must reasonably exclude the possibility that the fingerprints were left innocently. Evans, 669 S.W.2d at 710 (citing Cupp, 384 S.W.2d at 37).

In this case, taken in the light most favorable to the State, the evidence established that the Defendant had been to the victim's apartment months prior for a matter of minutes but had not advanced beyond the front-door threshold of the living room. The State's evidence was uncontroverted and excluded the possibility that the Defendant had previously handled the window screen that served as the entry point to the burglary.

Thus, turning to the specific convictions, the evidence showed that the Defendant entered the victim's apartment while she was not there by removing the screen and opening the window. These facts permit the inference that the Defendant lacked the victim's consent and entered the apartment with the intent to commit a theft. Therefore, the evidence was sufficient to support the Defendant's conviction for aggravated burglary.

The Defendant also was seen loading the victim's property into a vehicle, abandoning the victim's television on the sidewalk in the process. Additionally, the victim testified that the value of the property taken from her apartment was over $1,000. This evidence was sufficient to support the Defendant's conviction for attempted theft. Accordingly, the Defendant is not entitled to relief on this issue.

*Prior Convictions*

The Defendant also contends that the trial court erred in ruling that if the Defendant chose to testify, his prior theft convictions would be admissible to impeach his credibility. However, the appellate record does not contain the trial court's ruling to this effect, nor does it contain a transcript from the pre-trial hearing at which the court made this ruling.

It is the appellant's duty to provide a record which conveys "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). "Where the record is incomplete and does not contain a transcript of the proceedings relevant to an issue presented for review, or portions of the record upon which the party relies, an appellate court is precluded from considering the issue." State v. Ballard, 855 S.W.2d 557, 560–61 (Tenn. 1993). In such cases, we must presume that the trial court ruled correctly. State v. Ivy, 868 S.W.2d 724, 728 (Tenn. Crim. App. 1993); State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991). The record provided by the Defendant

on this issue does not provide this Court with an appropriate foundation for review. Consequently, the Defendant is not entitled to relief on this issue.

## CONCLUSION

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
JEFFREY S. BIVINS, JUDGE